was balancing the equities when it refused to disgorge Discount Party Bus's ill-gotten gains. The Lanham Act is equitable, but equity is not amorphous. It has bounds, and the district court's decision fell outside those bounds. The district court's decision and refusal to disgorge Discount Party Bus's profits was an error for three reasons. First, the district court inappropriately placed the burden of proof to establish the extent of Discount Party Bus's unjust enrichment on Safeway Transit. Second, the district court said it was balancing the equities, but failed to consider any specific equitable principles and failed to discuss any equitable defenses. And third, the district court inappropriately concluded that Discount Party Bus's vigilante attempt to steal Safeway Transit's trademarks, its goodwill, and its websites is not the type of conduct that the Lanham Act is designed to deter. Likewise, the district court erred in concluding that this is not an exceptional case in two ways. It failed to consider the numerous abuses by Discount Party Bus, leading up to and continuing through the litigation. And it failed to appropriately evaluate the overwhelming strength of Safeway Transit's infringement case, particularly considering- I'm also running through all of the facts of this case, the relationship of these two entities and the proprietors of the business organizations, and the fact that the defendant here originally started this business and using these names. And these parties have argued back and forth over violations and settled and then fought again. The backdrop of that longstanding dispute and conflicts, the court seems to take into account. And I don't know what's wrong with that. What's wrong with the court taking into account the long-term interaction of these entities and the violations and cross-violations in their hard-line business approach? It is exactly that equity does have bounds. And there are rules that apply specifically- So what are the specific bounds you say the district court breached here? Absolutely. And give me the authority for it. The district court, in looking back and accusing Safeway Transit of having its own bad acts, seemingly applies an unclean hands defense without actually saying it has unclean hands. Now, unclean hands, as an equitable defense, has a strict application specifically in the trademark infringement context. It must be egregious behavior that is directly related to the cause of action. Now, courts, including the Ninth Circuit, have said that means that the behavior must specifically involve the trademark at issue. And that's the Japan Telecom case. But it must be directly related to the merits of the cause of action. And it must be particularly egregious. And the trial court made no such findings that any conduct by Safeway Transit fit either of those categories. So your view is that they have to actually establish the defense. You can't just consider bad behavior in balancing the equities. What's your authority for that? Well, Your Honor, this court in Sturgis on remand instructed the trial court to state if any of the equitable defenses, including latches and estoppel, apply to state the clear understanding that the trial court found to apply that equitable defense to that particular defendant and why it applies. Again, equity is not limitless. And if there is the equitable defense of unclean hands, the trial court's position, if the trial court were correct in just saying they're not the nicest actor, but it doesn't rise to the level of unclean hands, that would eviscerate the defense of unclean hands. I don't think that's true. Unclean hands is an absolute defense. It says, you have unclean hands, so we're not going to allow you to recover. What I understand the district court to be doing here is balancing the equities. In other words, there's some good things that Safeway Transit had in its favor, and there's some bad things that Safeway Transit had against them. And I've got to balance that out and figure out where the equities stand. That seems to me to be different than trying to establish an absolute defense. It is different than establishing the defense of unclean hands, but that's exactly what courts have been admonished not to do when applying the unclean hands defense. This is not just a challenge to see who is the best person. Unclean hands sets a high bar so that people don't come to court and just fight over who is the best person. Now, in this particular case, another way to balance the equities is to consider multiple factors that courts across the country have recognized as equitable factors. The Third, Fourth, and Fifth Circuits have recognized six factors, and the District of Minnesota in B&B, Hardware versus Hargis, recently also evaluated those six factors. And none of those factors questions whether or not the defendant, or the plaintiff rather, has acted improperly absent some sort of unclean hands defense. What precludes the district court from applying the language in the Lanham Act that the entitlement to the kind of relief you're seeking, the disgorgement, is subject to principles of equity? Isn't that exactly what the district court was doing? It is subject to principles of equity, Your Honor, and that's not what the district court was doing. The principles of equity include weighing specific factors, providing a clear understanding of how those factors might apply in a particular case. And the district court in this case didn't make any findings on any factors, did not say whether or not any equitable offenses specifically applied. Now, the conduct that Your Honor identified and was discussed briefly at the trial court wasn't actually tried at the trial court, and for very good reason. It was subject to a prior lawsuit, a lawsuit that Discount Party Bus brought against Safeway Transit in 2014 and settled, resulting in a decision on the merits. It wasn't re-litigated in the present lawsuit because race judicata bars re-litigation of cases that have been tried and dismissed. The trial court's reasoning effectively says Discount Party Bus gets two bites at the apple. It can sue Safeway Transit for something it perceives was wrong, settle that case, and then use that same conduct as a justification to do whatever it wants. And that's against the principles of race judicata, and that is against the principles of balancing the equities and applying specific affirmative defenses of unclean hands. What about the, so with the discouragement of profits issue, there was the issue of deterrence. And I will agree that the findings of the district court are sloppy. They are hard to parse. They're not exhaustive. But the district court did find over the course of about two pages of its order that it believes that Discount Party Bus thought that it had the right to use the trademarks and it was an honest mistake. And it seems to me that that supports the district court's decision that Safeway is not entitled to discouragement of profits. It's not clear that the trial court actually made that finding. It made a statement that it was either or. It was either that it thought it could do so, or it just wanted to get back at Safeway. I understand that. And that's why I say it's not very good. But then I think the district court went on to say about two pages later that it was an honest mistake by the owner of Discount Party Bus in a different context. And so that to me at least leads me to believe that the district court made that finding at some point. It's not clear whether the district court made that finding. I agree that it is implied. That finding, to the extent the reference you're talking about is a finding that Discount Party Bus had a genuine belief it could use those marks, that's not supported by any evidence in the record. At trial, and this is cited in the briefs, at trial Mr. Fernandez never once testified that he thought he could resume use. He never once testified that he was advised by counsel that he could resume use. What he testified at trial was, I never intended to use again, which is partly why the trial court said that to the extent there were any rights ever from his use prior to 2009, it was abandoned. And he also testified that he was advised by counsel to file trademark registration. So there is no evidence that Discount Party Bus and Mr. Fernandez thought he could use it. His testimony, and the only evidence in the record, indicates that he wanted to file these trademark registrations to stop Safeway Transit from using the marks and the websites he knew they had been using for the past five or six years. So to the extent that that statement would be considered a finding that Discount Party Bus had that genuine belief, it's not supported by any evidence in the record. Thank you. Now, as I indicated, part of the trial court's basis for declining to disgorge the profits was that the trial court said, Safeway Transit failed to present any evidence or argument that Discount Party Bus was unjustly enriched. Now, that is also a misstatement of the record that was presented at trial. But more importantly, it misplaced the burden of proof on Safeway Transit. Now, one of the underlying principles of the Lanham Act is to make infringement unprofitable. In fact, that principle dates prior to the Lanham Act. In 1916, and again in 1942, the US Supreme Court said that infringement should be unprofitable. And that's why there is a presumption that it is the burden of proof on the infringer to show that they made no money from the infringement. In 1945, the Eighth Circuit in Obier-Nester stated it very succinctly, that the burden is on the infringer to prove that the infringement had no cash value. And the presumption prevails that all of the defendant's profits are from the infringement. That presumption didn't stop in 1945. As recently as 2011, in Masters v. UHS, the Eighth Circuit again stated that with the finding of infringement, a prevailing plaintiff is entitled to a disgorgement subject only to those principles of equity. And the First Circuit in Venture Tape also said that a finding of direct competition and infringement entitles the plaintiff to a disgorgement, shifting the burden of proof on the infringer. Well, the court simply said there was no unjust enrichment. And in the absence of an unjust enrichment, there's no entitlement to disgorgement. The trial court said that Safeway Transit failed to identify any evidence of unjust enrichment, which would be placing the burden inappropriately on the plaintiff. But as I alluded to, this is also a misstatement of the record. The trial court said there was no evidence presented, but there was evidence presented. It wasn't exhaustive evidence, but that was due to discovery abuses. At trial, Safeway Transit did present evidence. We disagree. I simply don't see how that transferred a burden of proof. I'm sorry, what? We disagree. I don't see how that transferred the burden of proof, to use your phrase. The burden of proof was transferred once Safeway Transit established a direct competition and infringement, and proved that discount party bus made money while operating an infringing website and exclusively promoting that infringing website. Safeway Transit did, contrary to the trial court's order, did present evidence that discount party bus made money from the infringement. It presented evidence that the infringing website ran for eight months. That it was exclusively promoted through social media. That it was run during particularly busy seasons. That Mr. Fernandez told the creator of the website, the website's getting great views and clicks. And it proved that discount party bus made money during that period of time. To the extent it is Safeway Transit's burden to prove that discount party bus made money during the infringing period, it met that burden contrary to what the trial court said. Counsel, isn't injunctive relief really a preferred remedy under the Lanham Act? Yes, it is a preferred remedy. And in some cases, that is, in many cases, that is the appropriate remedy. When, for example, the parties aren't in direct competition for the same product, or in the same geographic region, or the marks at issue aren't necessarily identical. But the Eighth Circuit has recognized that in cases like this, where the court is convinced that the infringing party has ceased all use anyway, as in Masters v. UHS, an injunction is a remedy in name only. In Masters, the Eighth Circuit reversed the denial of a discouragement, saying that because the defendant has ceased all affiliation with the infringing mark and product, there's no likelihood that it's going to infringe again. That makes the injunction a remedy in name only and makes it insufficient as a matter of law in order to remand to discourage the profits. So in this case, because of the direct infringement, direct competition, and because the trial court was convinced that discount party bus, now that it had been caught, wasn't going to do it again, an injunction was not sufficient to satisfy the equities. I'd like to talk briefly about the decision that this is not an exceptional case before I reserve some time. The trial court concluded it was not an exceptional case, which is a totality of the circumstances determination. But the trial court did not consider the totality of the circumstances. Abuse during litigation process can form the basis of the finding of an exceptional case. And the trial court was presented with ample evidence that discount party bus committed fraud on the Secretary of State when it used Safeway Transit's to obtain a trademark registration, committed fraud on the US Patent and Trademark Office when it used Safeway Transit's website as its specimen, falsely claimed that it had been continuously and exclusively using both marks through 2014 when Mr. Fernandez admitted he'd stopped all use in 2009, used those registrations in an attempt through ICANN to steal Safeway Transit's websites, despite the fact that Mr. Fernandez said he never intended to use it. Let me ask you about the alleged litigation abuses. The way I view it, and you can correct me if I'm wrong, very relevant, I think, potentially to the attorney fees issue and whether it's an exceptional circumstance. I don't see it as particularly relevant to the profits issue or the damages issue, because it doesn't fall into the unjust enrichment deterrence. It really doesn't fit into any of those categories. Am I right about that, that you're primarily arguing that on attorney's fees? Primarily on attorney's fees, but it is also the type of conduct that should be deterred. It is, to the extent it is a willful infringement, the type of conduct that Mr. Fernandez engaged in leading up to and continuing through this lawsuit is the type of conduct that needs to be deterred. But yes, primarily it is on an award of attorney's fees. Counsel, let's suppose that this is an exceptional case. Doesn't the district court still have discretion to deny attorney's fees? So where does that really get you? If it is an exceptional case, the district court does have the discretion to deny an award of attorney's fees. And so the district court could reduce or eliminate altogether an award of attorney's fees. But it premised its denial of an award of attorney's fees on it not being an exceptional case. With that, I would like to reserve the rest of my time. Thank you. Thank you, Mr. Frazier. Mr. Szymanski. Good morning, Your Honors, and may it please the court. Judging witness credibility is the hallmark function of a district court in a bench trial. And that's exactly what the district court did here. The court watched Mr. Fernandez's demeanor and listened to his tone as he testified during a direct examination and two separate cross-examinations from Safeway. The court found that Mr. Fernandez's genuine belief that he could resume use of the marks explained the infringement. Now, the court also found Mr. Fernandez was wrong about that, but it credited the sincerity of that belief and found he did not act in bad faith. On this record, Your Honors, the district court did not abuse its discretion in denying the extraordinary remedies of disgorging of profits and attorney's fees. And we ask this court to affirm those denials. Your Honor, as Safeway says in its opening brief and the summary of the case, it is appealing the denials of disgorging of profits and attorney's fees. The standard of review for those denials is abuse of discretion under this court's cases in Quest Communications, Minnesota Pet Breeders, and Sturgis. Turning to the first point, after the district court granted Safeway's request for a permanent injunction, the district court did not abuse its discretion in denying the extraordinary remedy of disgorging of profits. As Judge Smith alluded to, the plain language of 15 U.S.C. 1117A says subject to the principles of equity. And this court applied the bedrock principle of trademark law where if it finds an injunction is sufficient to satisfy the equities, it will not grant a disgorging of profits. Well, counsel, one of the problems I'm having with this case is these findings are thin. I mean, they're really, really thin. And in fact, on the disgorgement of profits, we're talking about there are three paragraphs in the district court's order, but two of them explain the law. And then the third one, the only thing we have here is we have, it could have been for revenge, the use of the marks, or it could have been because he had a misunderstanding of whether he had a right to use those marks. That's not really much of a finding. That doesn't really facilitate appellate review. What do we do with that? Your Honor, I think what you do with that is you look and see that that is a weighing of two possible rationales that he's looking at here. And maybe it's a close case on those. That's fine. But if you look at the very next sentence, it says, I cannot condone, or the district court cannot condone retaliation and does not condone retaliation and finds that an injunction is sufficient here. I think that is a clear statement that it is crediting the former, the genuine belief. If that's not clear enough, I think as Your Honor, Judge Strauss pointed to earlier, if you look on the next page, addendum page 21, he quite clearly says, the court cannot conclude that Mr. Fernandez deliberately acted unlawfully given the court's factual finding that Discount Party Bus used the terms first. So that is clearly the district court crediting that former belief, ultimately finding that, yes, the court's not gonna find bad faith because he used the term first and genuine belief he was entitled to do that. So that takes care of deterrence, but then opposing counsel makes the point that when you get to damages, you're ignoring the fact that there are litigation abuses. When you get to unjust enrichment, you're shifting the burden of proof. What are your responses to those two particular arguments that opposing counsel made? Your Honor, just to be clear, you're referring to the damages rationale and unjust enrichment rationale for disgorgement. First, I would note in its reply brief, Safeway abandons the damages rationale. This is page 10 of its reply brief. So I don't think the court needs to address that any further than that. In terms of unjust enrichment, what the court found was that Safeway had done just enough to establish likelihood of confusion, but it didn't do much more than that. And that's well-supported in the record here. As it admits in its opening brief on pages 21 and 53, it believed likelihood of confusion was conclusively established and didn't put forward any additional evidence on that at trial, and it did so at its own peril. The court, looking at that evidence, simply inferred reasonably, we believe that there was only minimal confusion. I mean, when you look at that, there was no actual confusion established, no expert testimony, no consumer testimony, not a single consumer survey, nothing like that to prove likelihood of confusion. Safeway relied simply on inferences, and the inference here was that it was only weak. Now, it wasn't- They have to prove it, or did you have to prove the absence of unjust profits  Your Honor, they have to provide a theory, or at least argue it below. And that was the problem we had here. In our Applee brief, we asked Safeway to identify where it urged a theory of unjust enrichment. It pointed to two things. It pointed to, one second, Your Honor, it was ECF number 107, I believe, page 22, and a portion of the trial transcript. If you look at both of those, well, all that's there is a recitation of the three possible rationales. And then the only one that could possibly be deemed to have an argument attached to it is the one in the trial transcript, where it simply says all three apply. That's not an argument, Your Honor. That's not a theory of the case. As this court said in Sturgis, one sentence does not make an argument. I think it'd be useful here to look at the Masters case to see what a typical unjust enrichment case might look like. And I also note Safeway relied somewhat on this in its opening argument. So in the Masters case, there was UHS of Delaware got a 10-year license from Masters to use the Masters trademark. And ultimately, UHS used that mark for treatment programs outside of that license agreement. Unlike here, there was no prior use at issue. Unlike here, there was a finding of willful infringement. And unlike here, there was no injunction granted. Notably, again, unlike here, Masters did not offer any expert testimony, or sorry, Masters did offer expert testimony to establish unjust enrichment at trial. And I think perhaps most importantly here, this court was able to notice that Masters offered a theory of unjust enrichment to the jury at the district court. So compare all those factors to what we have here, a single sentence saying all three apply. That's simply not an argument for an unjust enrichment theory, and the court was well within its discretion in denying to award discontent of profits on that basis. Your Honor, just turning briefly to the final rationale deterrence, it's worth noting that the district court weighed the facts and this ultimately turned on the credibility determination of Mr. Fernandez, and the district court was in the best position to do that. I'd also like to point out that the, I'd also like to note that the district court did in fact grant the preferred remedy of the Lanham Act, a permanent injunction. And so in weighing all these, in weighing these three rationales recognized by Minnesota pet breeders, it did not abuse its discretion in finding that that injunction was sufficient here. Accordingly, we ask this court to affirm the denial of discontent of profits. Turning to the second point, the district court did not abuse its discretion in denying attorney's fees. This court adopted, this court in Sturgis adopted the octane fitness standard for determining whether a case is exceptional, and whether it stands out with respect to the substantive strength of the litigating positions or the litigation conduct. The court must consider the totality of the circumstances, and it's allowed to consider consideration, sorry, it's allowed to view considerations like deterrence and frivolousness. Now, this court already decided deterrence in the discontent of profits analysis. There was no need to deter it beyond the preferred remedy of the Lanham Act. On this, on the attorney fees issue, I'm actually having a little bit more trouble parsing the district court's order. I understand the point, and I think it's, you're probably right, it becomes a finding that this was an innocent infringement. He thought he had, he thought he should, you know, could use the marks. But the two things that I think are missing, and, you know, at least make it a close question as to remand for further findings, are we have bad acts, supposedly, that are referred to, and this is the chutzpah site in the district court's order. We have bad acts, but the district court doesn't tell us what they are,  possibly could have been on Safeway's part. And then we also have the issue of the litigation abuses, which is nowhere mentioned. It was clear that Safeway Transit raised it, but it's nowhere mentioned in the district court's order. It's not as if we know if the district court rejected it factually, or just didn't think it was important enough. What do we do with that? This is pretty weak stuff, I think, for us to try to parse and make findings for the district court. Your Honor, I'll address the bad acts first. There are findings on bad acts, like you acknowledged the chutzpah argument that Safeway took the marks, and that Safeway used domain names close to Discount Party Bus knowingly. So those are in there. However, I would say, looking at what the district court did, that's sort of a, it doesn't belabor that aspect. I don't think it gave that, it considered it, but it didn't give it that much weight. The bulk of its analysis is on Mr. Fernandez's intent, and it's entirely within the court's discretion to, once it considers all that it needs to consider, to give weight to certain factors and not give as much weight to others. And here, it focused on the innocent infringement. And I would note. So you think it's okay if the district court just fails to mention, even in a footnote, the alleged discovery abuses? And I'm not saying that they actually existed. I'm just saying that the other party raised them. It's okay not to mention those in the order. Your Honor, if it's not okay, it's harmless error here, because nothing stood out with respect to those purported discovery abuses. All that Safeway has identified in the litigation is the voluntary dismissal of a counterclaim, which is provided for in the Federal Rules of Civil Procedure, Rule 41, and a motion to compel that was partially granted and partially denied. That's not an exceptional case. If you look at the cases that it cites that talk about inappropriate litigation conduct, I believe the case is Tatema, rather, is the one that they rely on. The oppressive litigation conduct at issue there was the defendant was threatening the judges and threatening the plaintiff with violence. Now, I'm not saying that's always what's needed, but that's the kind of exceptional case we're talking about here. Not a partially granted, partially denied motion to compel and a voluntary dismissal of a counterclaim. This case ultimately turned on a finding of Mr. Fernandez's credibility, and the district court was in the best position to make that credibility determination. Safeway's arguments amount to relitigating Mr. Fernandez's credibility on appeal here and provides no basis to disturb the district court's disgorging of profits and attorney's fees, and we ask this court to affirm those denials. Your Honor, if there are no further questions, I'll yield the balance of my time. Thank you, counsel. Mr. Frazier, your rebuttal. Thank you. I'd like to address two points made on rebuttal. The first is the litigation misconduct. I would ask this court to pay close attention to the Urban Outfitters case out of the Third Circuit, where in that case, the trial court considered discovery abuses and declined to declare it as an exceptional case. The Third Circuit Court of Appeals said you're presented with evidence of other types of abuses. Specifically, it was a few witnesses of being accused of lying, not the egregiousness that was found in the Teiteimat case, but witnesses that were lying and potentially obscuring or hiding evidence. And it remanded to the district court to consider those without any sort of outcome determination. The trial court, on remand, did consider the additional litigation abuses, those witnesses lying and hiding evidence, concluded it was exceptional, which was then affirmed on subsequent appeal. That's what we're talking about here, that type of conduct. It's not merely what was the specific conduct here. The specific conduct here involves obtaining these registrations fraudulently, using the registrations to submit complaints through ICANN in an attempt to steal Safeway Transit's domain names. And then after being sued, perpetuating that fraud. In its answer, after being sued, instead of abandoning the trademark registration for my party bus. Again, this is a registration that Mr. Fernandez testified. He did not intend to use the mark when he filed the registration. Instead of abandoning it, he submitted a supplemental specimen. He asked the trial court to declare that the registrations were valid to transfer the domain names to him. In the litigation, he denied all affiliation with the infringing website. Denied in his answer that he owned the website. In written discovery, never identified it or his social media accounts as his own. In fact, said he didn't have anything to do with it. It was only through third party discovery that Safeway Transit was able to uncover that affiliation. But that doesn't sound like, I mean, that's bad behavior. But it doesn't sound to me like discovery abuses in the sense of just not answering discovery at all, being late, answering it, I guess, was third party discovery. So you're saying that a lot of this happened during discovery between Safeway Transit and discount party bus? Yes, it was discovery. But it was also using this trial court to perpetuate the fraud that it was committing on the trademark office and the ICANN in claiming that it was continuously and exclusively using these marks through 2014 and 2015, relying upon my client's website, my client's logo, as evidence of discount party buses use. It's that type of bad faith conduct that the trial court, at the very least, should have considered. On the issue of Mr. Fernandez's intent, the trial court's findings don't say how it came to the conclusion that he had a good faith belief. He never testified he had that belief. Trial court implied that it was based on some unsound legal advice. We don't know what that legal advice was. Thank you, Your Honor. Thank you, Mr. Frazier. Thank you also, Mr. Szymanski. We appreciate the argument that you've provided to the court this morning, the briefing  You may be excused.